NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                                                    )
WAYNE PUFF,                                       )         Civil No.: 11-0072 (JLL)
                                                                    )
      Petitioner,                                      )
                                                                    )
      v.                                                    )
                                                                    )         **OPINION**
UNITED STATES OF AMERICA,             )
                                                                    )
      Respondent.                                  )
_____  )

**LINARES**, District Judge.

      Currently before this Court is Petitioner Wayne Puff's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Respondent, the United States (hereinafter referred to as the "Government"), submitted an Answer in response to the motion. The Court has considered the submissions of the parties and, for the reasons set forth below, denies Petitioner's motion.

## **BACKGROUND**

**A.**    **Plea Agreement, Conviction and Sentence.**

      On March 6, 2009, Wayne Puff entered into a written plea agreement with the government dated February 12, 2009 ("Plea Agreement"). Pursuant to the Plea Agreement, Puff pled guilty to one count of Information charging him with conspiracy to commit wire fraud contrary to 18 U.S.C. § 1343 in violation of 18 U.S.C. § 1349. The Plea Agreement, which was signed by Puff and his original attorney, Thomas Moran, states that Puff and the Government agreed that a total Guidelines offense level of 40 would be reasonable, which at Criminal History Category I is 292–265 months. Answer, Ex. 1, Schedule A ¶ 10. In

accordance with the agreed upon total Guidelines offense level, Puff voluntarily waived his right to file any appeal, collateral attack, writ or motion, including but not limited to a motion under 28 U.S.C. § 2255 if his sentence fell within or below the agreed upon Guidelines range of 40.  Id. at ¶ 11.[i]  The Plea Agreement specifically provides Wayne Puff's intention to waive his right to collaterally attack his sentence in the circumstance that his sentence fall below the agreed upon range:

> Wayne Puff knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 40.

Answer, Ex. 1, Schedule A, ¶ 11.  The Plea Agreement was signed and dated by Puff with an acknowledgment stating "I have received this letter from my attorney, Thomas Moran, Esq., and I understand it fully.  I hereby accept the terms and conditions set forth in this letter and acknowledge that it constitutes the plea agreement between the parties."  Id. at 5.

On April 9, 2009, Puff appeared before the Court to enter his plea.  During a thorough plea colloquy, the Court explained relevant parts of the plea agreement to Puff, including the waiver provision.  Answer, Ex. 2, at 20.  The Court then asked Puff if he understood that he made certain stipulations under Schedule A of the plea agreement, including voluntarily waiving the right to file any appeal or collaterally attack his sentence; the Court received an answer in the affirmative.[ii]  The colloquy confirmed that Puff discussed the terms of the Plea Agreement with his attorney, and that this action was taken by his own free will.  Id. at 22.  The Court questioned Puff on whether he understood the consequences that would result from entering into a guilty plea, including forgoing his right to trial and having a presumption of innocence; having his case considered by a grand jury; losing valuable civil rights such as the right to vote; and potential jail time without parole.  Id. at 14-

16. Puff responded that he understood. Id. at 16. The Court gave Puff the opportunity to ask any questions, confirmed that he had discussed the agreement with his attorney, and established that the signature on the Plea Agreement was his. Id. at 16, 20. Additionally, Puff confirmed that he was satisfied with the representation of his attorney, Thomas Moran, who was Puff's counsel during the plea. Answer, Ex. 2, at 6. On April 9, 2009, Puff's guilty plea was accepted, and he was convicted of the aforementioned charge. Answer, Ex. 1, at 4-5.

Puff's conviction stemmed from oral and written misrepresentations made by Puff to various investors about the safety and security of financial investments made in his business, New Jersey Affordable Homes Corporation. Answer, Ex. 2, at 25. During the plea, Puff admitted to submitting false loan documents to mortgage lenders and falsely representing to investors that investor money would be used to purchase and renovate real property. Id. at 25, 28. Furthermore, Puff misappropriated investor money for a variety of improper purposes, including personal benefit. Id. at 27. On January 14, 2010, Puff was sentenced below the agreed upon Guidelines offense level to 216 months imprisonment. Answer, Ex. 6, at 29.

**B.     Appointment of CJA Counsel**

On May 19, 2009, approximately one month after Puff entered into his plea, Puff's original attorney, Thomas Moran, was indicted for violating RICO, 18 U.S.C. § 1962(c); conspiring to violate RICO, §1962(d); and commissioning violent crimes in aid of racketeering (VICAR), 18 § U.S.C. § 1959(a). United States v. Bergrin, 650 F.3d 257, 263 (3d Cir. 2011). Answer 16. On June 17, 2009, Puff was appointed counsel Joshua L. Markowitz who represented Puff during sentencing. Answer, Ex. 3.

  C.    **Petitioner's Section 2255 Claims.**

Petitioner now asks this Court to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. In particular, Puff alleges ineffective assistance of his counsel, which can serve as the basis for setting aside a valid plea. United States v. Clark, 177 Fed. Appx. 228 (3d Cir. 2006). Puff's motion alleges, "[b]ecause of [Thomas Moran's] own criminal activity and investigation he was not able to properly represent me." Id. Puff's only support of this claim is that his original attorney, Thomas Moran, "was committing crimes and eventually indicted for various offenses." Id.

## LEGAL STANDARD

A.    **Generally.**

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. See Morelli v. United States, 285 F. Supp. 2d 454, 458 (D.N.J. 2003). Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). To establish a right to habeas corpus relief, a prisoner must demonstrate that the sentence has a fundamental defect resulting in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. See, e.g., United States v. DeLuca, 889 F.2d 503, 506 (3d Cir.1989); Morelli, 285 F. Supp. 2d at 458-59 (citations omitted). Thus, Petitioner is entitled to relief only if he can demonstrate that he is in custody in violation of federal law or the Constitution.

In considering the instant section 2255 motion, this Court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing

record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005). Moreover, this Court "must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).

    B.    **Khattak Test**

In United States v. Khattak, the Third Circuit held that waivers of a right to appeal are generally valid as long as they are entered into "knowingly and voluntarily" and do not work a "miscarriage of justice." 273 F.3d 557, 558 (3d Cir. 2001); United States v. Warner, 301 Fed. Appx. 137, 140 (3d Cir. 2008). Although the Khattak court did not explicitly state that its ruling is equally applicable to a criminal defendant's waiver of the right to bring a motion pursuant to section 2255, the Third Circuit has indicated that a waiver of the right to collaterally attack a sentence is valid if it meets the Khattak test. United States v. Mabry, 536 F.3d 231, 244 (3d Cir. 2008) (enforcing collateral waiver provision of plea agreement under two-prong Khattak rule); United States v. Perry, 142 Fed. Appx. 610, 2005 WL 1865420, at *1 (3d Cir. Aug. 8, 2005) (concluding that district court's denial of petitioner's collateral attack against his sentence was proper under Khattak in light of petitioner's express waiver of his right to pursue a collateral attack).

With regard to whether the waiver was knowing and voluntary, this Court must, at a minimum, "review[] the terms of the plea agreement and change-of-plea colloquy and address[] their sufficiency." United States v. Mabry, 536 F.3d 231, 238 (3d Cir. 2008); see also United States v. Simmons, 450 F. Supp. 2d 574, 578 (E.D. Pa. 2006) ("In determining whether a defendant's waiver of appellate rights was knowing and voluntary, the role of the sentencing judge in conducting a colloquy . . . is critical."). The Third Circuit acknowledged that even where a plea agreement was entered into knowingly and voluntarily, there may be

"an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver." Khattak, 273 F.3d at 562.  The court refused to promulgate an exhaustive list of circumstances where a valid waiver might be disregarded, preferring instead to utilize a "multi-factor balancing test which takes into consideration 'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the government, and the extent to which the defendant acquiesced in the result." Warner, 301 Fed. Appx. at 141 (quoting Khattak, 271 F.3d at 563).  With this framework in mind, the Court now turns to Petitioner's argument.

## LEGAL DISCUSSION

A.     **Waiver of Puff's Right to Bring Section 2255 Motion**

Puff claims that habeas relief is warranted because his original attorney, Thomas Moran, was indicted for various offenses including, *inter alia*, bribery of a witness, conspiracy to murder a witness, and traveling in aid of racketeering enterprises.  Puff does not contend that his waiver of collateral attack was unknowing or involuntary nor does Puff demonstrate enforcement of the waiver would work a miscarriage of justice.  Additionally, Puff does not suggest that he received ineffective assistance from counsel in entering the plea agreement.  While this Court generally must accept Petitioner's factual allegations as true, "bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing." Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987).

In Schedule A of the written Plea Agreement, Puff explicitly waived his right to appeal or collaterally attack his sentence if that sentence fell within or below the Guidelines range that resulted from a total Guidelines offense level of 40, which at Criminal History Category I is 292–265 months.  Answer, Ex. 1, Schedule A, ¶ 11.  Puff's sentence was a downward departure from the 292–365 month range to 216 months, putting the waiver into

effect. Answer, Ex. 4, at 2. With the waiver in operation, Puff's right to collaterally attack his sentence under section 2255 is now relinquished. Because Petitioner cannot demonstrate he entered into the Plea Agreement unknowingly and involuntarily, or that enforcing the waiver would work a miscarriage of justice, the Court will enforce Petitioner's waiver, thereby denying his section 2255 petition.

### I. Knowingly and Voluntarily

With regard to the first prong of Khattak, the written Plea Agreement signed by Puff and the plea colloquy conducted on April 9, 2009 demonstrate that Puff entered into the Plea Agreement knowingly and voluntarily. The Plea Agreement uses explicit language indicating Puff's unqualified intention to waive his right to attack the sentence: "Wayne Puff *knows* that he . . . *voluntarily waives*, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under . . . *28 U.S.C § 2255*." Answer, Ex. 1, Schedule A, ¶ 11 (emphasis added). See Abdulaal v. United States, Civil No. 09-4153(DMC), Crim. No. 06-525(DMC), 2011 WL 2293367 at *3 (D.N.J. June 7, 2011) (concluding waiver to collaterally attack sentence enforceable because language indicated it was entered into knowingly and voluntarily). Further, there is no indication that Puff did not understand the document he agreed to be bound by. Puff signed and dated the waiver on March 6, 2009, acknowledging that he accepted its terms and conditions and understood it fully. Answer, Ex. 1, at 5. As president and founder of NJAH, Puff coordinated and supervised a massive Ponzi scheme defrauding multiple mortgage lenders tens of millions of dollars, evidencing a certain level of cognitive ability to appreciate the significance of the legal documents he signed. Answer, Ex. 2, at 28-29.

Additionally, the plea colloquy further countermands any suggestion that Puff entered into the Plea Agreement involuntarily or unknowingly. Fed. R. Crim. P. 11(b)(1) mandates that this Court must address the defendant personally in open court prior to accepting a plea

of guilty. During the address, "the court must inform the defendant of, and determine that the defendant understand . . . (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N).

In the case *sub judice*, the Court discussed the waiver and its potential consequences to Puff at length. The Court addressed the waiver, asking Puff whether he believed the "plea agreement letter of February 12th sets forth accurately what the plea agreement with the Government is and what you expect to get in return for pleading guilty." Puff responded in the affirmative, directly answering the Court's question in open court. Answer, Ex. 2, at 11. Puff also averred he had the opportunity to review the Plea Agreement and discuss it with his attorney, Thomas Moran. Id. at 10. Thus, the Court sufficiently addressed the waiver provision and determined that Puff understood the waiver of his right to file a petition pursuant to 28 U.S.C. § 2255. See, e.g., United States v. Dancy, Nos. 3:CR-03-340, 3:CV-06-070, 2006 WL 2504028, at *3 (M.D. Pa. Aug. 28, 2006) (holding that a waiver of right to file a section 2255 motion is enforceable where petitioner indicated that he understood the waiver at his plea colloquy); Prado v. United States, No. Civ. 05-0938(JBS), CRIM. 01-373-7(JBS), 2005 WL 1522201, at *2 (D.N.J. June 27, 2005) (enforcing waiver of right to bring section 2255 motion where petitioner signed plea agreement which included waiver provision and stated he understood the waiver at his plea colloquy).

Further, Puff does not claim that the plea colloquy was flawed in any other respect. See Williams v. United States, Civ. Action No. 09-486 (JLL), Crim No. 05-316, 2009 WL 2424695, at *4 (D.N.J. Aug. 6, 2009) ("[T]he Court failed to directly inform the defendant of, and determine that he understood, the waiver of his right to file a petition pursuant to 28 U.S.C. § 2255. [A]t no point [was] the Defendant informed directly that he has waived his right to appeal."). In the instant case, the Court adequately informed Puff that through his Plea Agreement, he was "voluntarily waiving the right to file any appeal or any collateral

attack to his sentence or conviction, if the sentencing guideline level . . . is 40 or less." Answer, Ex. 2, at 20. Accordingly, this Court finds no reason to believe Puff entered into the Plea Agreement unknowingly or involuntarily. See United States v. Washington, 104 Fed. Appx. 217, 218 (3d Cir. 2004) (holding that a thorough colloquy allowed the court to determine defendant's waiver was agreed to knowingly and voluntarily).

### II. Miscarriage of Justice

Petitioner has not demonstrated any of the Khattak factors to indicate a miscarriage of justice. Khattak, 271 F.3d at 563 (miscarriage of justice factors). Rather, Puff merely states that his original attorney, Thomas Moran, was involved in criminal activity unrelated to any charges against Puff. 2255 Mot. at 5. Without more, Puff's assertion does not present the type of "unusual circumstance" where enforcing Petitioner's waiver would result in a miscarriage of justice. See, e.g., Simon v. United States, Civ. Action No. 05-5503(JLL), 2006 WL 3534600 at *6 (D.N.J. Dec. 7, 2006) ("Petitioner provides no basis for the Court to carve out an exception to the general rule that waivers of the right to . . . collaterally attack one's sentence are valid and enforceable where the movant is claiming ineffective assistance of counsel at sentencing."); United States v. Minott, Crim. No. 04-59, Civ. No. 05-1135, 2006 WL 2372117, at *1 (W.D. Pa. Aug. 15, 2006) ("Petitioner does not allege that enforcing the waiver will work a miscarriage of justice, nor is there anything in the record that would suggest that enforcement would work such a miscarriage of justice.").

Additionally, although a miscarriage of justice may occur when "plea proceedings [are] tainted by ineffective assistance of counsel," there is no miscarriage of justice when the defendant acknowledges both in the plea agreement and plea hearing that he was satisfied with his attorney's representation. See United States v. Barlow, 266 Fed. Appx. 209, 212 (3d Cir. 2008) (quoting Teeter, 257 F.3d at 26). Based on the circumstances of the case, the Court finds no possible miscarriage of justice at work. Puff responded in the affirmative

when asked by the Court during the plea colloquy whether he was satisfied with his counsel's representation, asserting he had discussed the Plea Agreement with counsel. Answer, Ex. 2 at 6, 20. Likewise, the Court specifically questioned Puff about the Plea Agreement:

> THE COURT: Have you had an opportunity to review for yourself the plea agreement letter of February 12th, 2009?
>
> MR. PUFF: Yes, sir.
>
> THE COURT: And did you have an opportunity o discuss that plea agreement letter with your lawyer?
>
> MR. PUFF: Yes.
>
> THE COURT: Did you ask him any questions that you may have had with regard to what the plea agreement meant or what any of the words or phrases in that agreement meant?
>
> MR. PUFF: I have.

Answer, Ex. 2, at 10. Moreover, Puff made no allegation during the proceeding or in his section 2255 petition that his plea was tainted due to ineffective counsel. However, although the plea colloquy demonstrates Puff was satisfied with his representation, the Plea Agreement omits any assertion explicitly stating that Puff was satisfied with his counsel.[iii] Though this gives the Court pause, Puff nonetheless does not claim that the waiver itself was the product of ineffective assistance of counsel. See United States v. Akbar, 181 Fed. Appx. 283, 286-87 (3d Cir. May 12, 2006) ("[A] waiver does not 'become[] unenforceable simply because a defendant "claims" . . . ineffective assistance,' but only 'if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious."); United States v. White, 307 F.3d 336, 343 (5th Cir. 2002) ("an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."); see also United States v. March, 336 Fed. Appx. 218, 220 (3d Cir. 2009) ("A

Rule 11 violation, however, does not automatically render a waiver provision inoperative.").

Accordingly, the Court concludes that Puff knowingly and willingly accepted the terms and conditions of his Plea Agreement, including the waiver to collaterally attack his sentence. Because the Court concludes that to enforce the waiver would not work a miscarriage of justice, this court therefore has no jurisdiction to consider the merits of Puff's section 2255 claim. See Khattak, 273, F.3d at 563 (refusing to evaluate defendant's claim on the merits due to enforcement of valid waiver).

**B.      Remaining Ineffective Assistance Claim**

Having found Puff's waiver valid and enforceable,[iv] the Court need not consider any claims of ineffective assistance that have no bearing on the knowing and voluntary nature of Puff's waiver and/or his understanding of the terms of his plea. See e.g., Simon, 2006 WL 3534600 at *5 (stating that not holding waivers of collateral attack valid pursuant to section 2255 would "render such a waiver agreement essentially meaningless"); Dancy, 2006 WL 2504028 at *3 (stating that to excuse a defendant's waiver would "'make a mockery of [Fed. R. Crim. P. 11] and the judicial system'" (citation omitted)).

The Court reiterates that Puff received a downward departure at sentencing from the agreed upon 292–365 month range to 216 months, thereby triggering the waiver. Only after a comprehensive plea colloquy did the Court correctly conclude that Puff's waiver of his right to collaterally attack his sentence was knowing and voluntary. Moreover, Puff does not contend that his waiver of collateral attack was unknowing or involuntary. Absent a factual basis demonstrating that additional action is warranted, the Court will not consider Puff's petition any further. These waivers "'preserve the finality of judgments and sentences imposed pursuant to valid pleas of guilty.' Allowing defendants to retract waivers would prolong litigation, affording defendants the benefits of their agreements while shielding them

from their self-imposed burdens." <u>Khattak</u>, 273 F.3d at 561 (quoting <u>United States v. Rutan</u>, 956 F.2d 827, 829 (8th Cir. 1992)).

Having determined that Petitioner's claims have no basis in the record, the Court need not hold an evidentiary hearing.  <u>See</u>, <u>e.g.</u>, <u>Gov't of Virgin Islands</u>, 865 F.2d at 62 (3d Cir. 1989).

## **CONCLUSION**

Petitioner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is denied inasmuch as Petitioner waived his right to bring such a motion pursuant to the terms of his Plea Agreement.  An appropriate Order accompanies this Opinion.


DATED: August 6, 2012


                                          s/ Jose L. Linares
                                          JOSE L. LINARES
                                          U.S. DISTRICT JUDGE

---

Footnotes

[i] The "Waiver of Appeal and Post Sentencing Rights" section of the Plea Agreement states, "As set forth in Schedule A, this Office and Wayne Puff waive certain rights to file an appeal, collateral attack writ or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255."  Answer, Ex. 1, at 3

[ii] The colloquy at petitioner's plea hearing on April 9, 2009 indicates Petitioner's understanding of the waiver as follows:

> THE COURT:
>     In your case you have made certain stipulations under Schedule A of the plea agreement, and one of those stipulations is that you are voluntarily waiving the right to file an appeal or any collateral attack to this sentence or conviction, if the sentencing guideline level that I find applies to this case is 40 or less.
>     It is waiving your right to appeal, if I use a guideline analysis that is different than what your attorney and the Government used in arriving
> at that number, and it is also waiving your right to appeal if as part of your sentence, I accept any of the stipulations that you agreed to as set forth in Schedule A.
>     So if any of those things come to pass, you would have waived

---

        your right to appear in this case.  Do you understand that?
MR. PUFF: I understand that.
THE COURT: Have you discussed that with your attorney?
MR. PUFF: Yes, I have.
Answer, Ex. 2, 19-20.

[iii] The Plea Agreement only states that Puff received the Plea Agreement from his attorney and accepted its terms and conditions rather than an explicit statement that Puff was satisfied with his counsel, Thomas Moran. Answer, Ex. 1 at 5.

[iv] See United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (stating that Knowing and Voluntary waivers should be nullified "sparingly and without undue generosity" (quoting United States v. Teeter, 257 F.3d 14, 26 (1st Cir. 2001))); see also United States v. Wesley, 55 Fed. Appx. 47, 49 (3d Cir. 2002) (stating that post-sentence relief under § 2255 is a high standard because of the "great interest in the finality of judgments").